**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.

AMERICAN SOUTHERN INSURANCE COMPANY,

    **Plaintiff,**

v.

BAGI MECHANICAL, LLC, LASZLO BAGI, and WENDI BAGI.

    **Defendants.**

## COMPLAINT

Plaintiff, American Southern Insurance Company ("Plaintiff," "ASIC," or "Surety"), through its undersigned counsel, submits its Complaint against Defendants Bagi Mechanical, LLC, Laszlo Bagi, and Wendi Bagi ("Defendants," "Bagi," "Indemnitor(s)").

### I.    PARTIES

1. ASIC is a company organized and incorporated under the laws of the State of Georgia; ASIC's principal place of business is 365 Northridge Road, Suite 400, Atlanta, Georgia 30350.

2. Bagi is a Colorado limited liability corporation that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business at 385 South Pierce Ave, Louisville, Colorado 80027.

3. Upon information and belief, Laszlo Bagi is the Managing Member of Bagi, an individual Indemnitor, and his last known residence address is 5808 Knoll Crest Court, Boulder, Colorado 80301, and who has expressed an intent to remain in Colorado indefinitely.

4. Wendi Bagi is an individual Indemnitor and her last known residence address is 5808 Knoll Crest Court, Boulder, Colorado 80301, and who has expressed an intent to remain in Colorado indefinitely.

## II.     JURISDICTION/VENUE

5. ASIC hereby incorporates by reference all the allegations contained above as though set forth herein.

6. This Court has personal jurisdiction over the Defendants because Bagi transacted business in and around Weld, Colorado, including, but not limited to, performing construction work in and around Greeley, Colorado and entering into contracts with ASIC in which the Defendants promised to post collateral with ASIC as set forth in the contracts and to reimburse ASIC for, among other things, any losses, expenses, payments, attorneys' fees, costs incurred by ASIC in the event ASIC incurs losses as a result of issuing construction surety Bond on behalf of the Bagi. As such, Bagi and its Indemnitors purposefully availed themselves of the benefits and privileges of conducting business in Colorado.

7. This Court has original subject matter jurisdiction over ASIC's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of ASIC's claims against Defendants exceeds $75,000 (ASIC seeks collateral in the amount of $700,000), and ASIC is a citizen of a different state than the Defendants.

8. As set forth above, ASIC is a citizen of Georgia, where ASIC is incorporated and where its principal place of business is located. The Defendants are each domiciled in Colorado and therefore are citizens of Colorado.

9. ASIC has conducted a diligent search to ascertain the domicile of the Defendants, including, but not limited to, reviewing its underwriting files, reviewing the Secretary of State records, reviewing court filings, and conducting online research. Based on those searches, ASIC affirmatively alleges in good faith that neither Bagi nor any Indemnitors are a citizen of Georgia. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 106-108 (3rd Cir. 2015).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to ASIC's claim occurred in or around Greeley, CO.

### III.   GENERAL ALLEGATIONS

11. ASIC hereby incorporates by reference all the allegations contained above as though set forth herein.

**A.   The Bond**

12. ASIC, as surety, has issued the following construction payment and performance bond ("Bond") on behalf of Bagi, as principal, for the following construction project ("Project"):

| **Obligee** | **Project** | **Bond # and Amount** |
|---|---|---|
| Growling Bear Co., Inc. ("GBI") | Mechanical Weld County Human Services – Building A Project #1718 | #66599 $700,332 |

13. Pursuant to the terms of the Bond and prevailing law, ASIC has guaranteed that if Bagi fails to take certain actions, the underlying bonded obligation will become due, and ASIC will perform and/or pay the debt(s).

### B.     The Indemnity Agreement

14.     As consideration for ASIC's issuance of the Bond and other consideration, on or about April 18, 2018, Bagi and the individual Indemnitors executed an Agreement of Indemnity ("Indemnity Agreement") in favor of ASIC. A copy of the Indemnity Agreement is attached as Ex. 1 and incorporated herein by reference.

15.     The Indemnity Agreement provides, in pertinent parts:

**2. INDEMNITY**

The Indemnitors will pay, when due, all premiums for each of such Bonds in accordance with the Surety's regular rates in effect on the date such Bonds becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the Bonds, or of all liability by reason thereof. The Indemnitors agree and bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, to indemnify and save harmless Surety from and against any and all liability, loss, costs, damages or expenses of whatsoever nature or kind and arising out of or in any way connected with such Bonds, including but not limited to fees of attorneys and other expenses, cost and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such bonds and attempting to recover losses or expenses from Indemnitors or third parties, whether the Surety shall have paid or incurred same, as aforesaid. The Indemnitors will indemnify the Surety against any and all liability, loss, damages, fees of attorneys, and other expenses which the Surety may sustain or incur by reason of or reliance upon representations made by the Indemnitors regarding defenses available to Principal and/or Surety to claims made against any such Bonds. In furtherance of such indemnity:

A.  Surety shall have the right in its sole discretion to determine whether any suits or claims shall be paid, compromised, defended, prosecuted or appealed and to pay out such sums as it deems necessary to accomplish any of those purposes and its determination as to whether such suit or claim should be settled or defended shall be binding and conclusive on Indemnitors. Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering and legal services. Surety shall have the foregoing rights, irrespective of the fact that Indemnitors may have assumed, or offered to assume, the defense of Surety upon such claim. In any claim or suit hereunder, an itemized statement of aforesaid loss and expense, sworn to by an officer or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of Indemnitors.

B.  Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of whether any Bond loss payment has been made by Surety. If the Surety has cause to enforce the terms of this Indemnity Agreement by filing suit against Indemnitors to recover sums due under this Agreement, it is understood by the Principal and Indemnitors that the Surety may recover its further expenses of such litigation, accrued interest and including 25% of such sums as attorneys' fees. Any debt accrued by the Surety, on behalf of Principal and Indemnitors will accrue interest at 12% per annum.

C.  Surety shall have the right, and is hereby authorized, but not required, to defend in the name of Principal, or in the name of Principal to adjust, settle or compromise any claim demand, suit or judgment upon any of said Bonds unless Indemnitors shall, in writing, request Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, or otherwise to resist any such, and shall, as a condition precedent, first deposit with Surety satisfactory collateral sufficient to pay on a current basis all expenses of such litigation, defense or appeal, including attorneys' fees, and to pay any judgment or judgments rendered or that may be rendered, plus interest, costs, expenses and attorneys' fees thereon. In any event, the provisions of the following paragraph will apply.

D.  If Surety shall deem itself insecure or be required to or shall in its sole discretion deem it necessary to pay for or to set up a reserve in any amount to cover any actual, contingent or potential claim or claims, loss, costs, attorneys' fees or other expenses of any kind under or because of any Bonds executed by or for any Principal, or for any reason whatsoever shall find it necessary to pay the costs to defend, settle, compromise or adjust any such claims, including attorneys' fees, Indemnitors will immediately, upon demand, deposit with Surety funds in the amount of such reserve and any increase thereof, such funds to be held by Surety as collateral, or in the amount of such payments to be used by Surety in the payment, settlement, compromise or adjusting of any such claims, including any attorneys' fees, costs or expenses related thereto or the amount of such payments to be retained by Surety as reimbursement therefore. Surety shall have no obligation to invest, or to provide a return on, the deposit.

E.  Surety shall have the right, but not the duty, to defend or to intervene, in the name of Principal, in any action at law or in equity brought by any party in which the allegation is made, either expressly or implied, that Principal has failed to perform any contract or other duties or obligations, the performance of which are secured by any Bond covered by this Agreement. In such event, the provisions of the previous paragraph will also apply.

F.  The Principal agrees and hereby expressly declares that all funds due or to become due under any Contract covered by a Bond are trust funds, whether in the possession of the Principal or another, for the benefit and payment of all persons to whom the Principal incurs obligations in the performance of such Contract, for which the Surety would be liable under the Bond. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such

4

person to the trust funds. Principal shall, upon demand of the Surety and in implementation of said trust, set up a separate account, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received pursuant to said contract or contracts. Withdrawals from such account shall be by check or similar instrument signed by the Principal and countersigned by the representative of the Surety. Said trust or trusts shall terminate on the payment by Principal of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur. The Principal agrees and hereby expressly declares that title to all materials and supplies specially ordered or fabricated for any contract covered by a Bond shall be held in trust for the benefit of the owner of the improvement being constructed, or the Surety, as their interests may appear, and that possession of such material shall be subject to the direction of owner and Surety.

**3. DEFAULT**

This Agreement shall be in Default upon the breach by any Indemnitor of any provision hereof or upon the breach by Principal of the provisions of any Bond or Contract or of the application for any Bond, including but not limited to, any of the following events of Default:

A. Principal breaches, abandons or repudiates any Contract.
B. Any Obligee under any Bond declares Principal to be in Default.
C. Principal fails to pay for bond premium, labor or materials when such payment is due.
D. Principal diverts any Contract funds from one Contract to another, prior to the complete discharge of Surety.
E. Principal, or any Indemnitor, breaches any provision of this Agreement, of any Bond or any application for any Bond.
F. Principal, or any Indemnitor, becomes the subject of any agreement or proceedings of composition, insolvency, bankruptcy, receivership, trusteeship, or assignment for creditors.
G. Principal, or any Indemnitor, becomes actually insolvent.
H. Principal, if an individual, dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from justice or disappears and cannot be located with usual methods.

**4. REMEDIES UPON DEFAULT**

In the event of Default, as defined above, or if Surety deems itself insecure, Surety may at its option and sole discretion and without notice or demand, any right to which Indemnitors expressly waive,

A. Take over any Contract and complete it or arrange for its completion, all at the expense of Indemnitors.
B. Take possession of Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any Contract.
C. Take possession of the office equipment, books and records of Principal as are necessary for completion of any Contract.
D. Loan such funds, guarantee a loan for such funds, as Surety shall deem necessary for the completion of any Contract and for the discharge of Surety in connection with any Contract. Repayment of such loan shall be covered by the indemnity hereunder.
E. Immediately demand that any Indemnitor perform any or all of said Indemnitor's obligations under this Agreement.
F. File an immediate suit to enforce the provisions of this Agreement.

**5. COLLATERAL SECURITY**

If a claim is made against Surety, or if the Surety deems itself insecure or otherwise in its sole discretion deems it necessary to establish a reserve for potential claims, and upon demand from Surety, Indemnitors shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in sufficient amount to protect Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral may be applied to any indebtedness of Indemnitors hereunder or held by Surety until it has received evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all loss, expense and attorneys' fees. Surety shall have no obligation to invest, or to provide a return on, the deposit.

Each of the undersigned agree that the failure to provide Surety with collateral it demands and to which it is entitled, as set forth in this agreement, shall entitle Surety to immediately (or whenever Surety otherwise chooses to do so) seek an injunction requiring some or all (whichever Surety chooses) of the undersigned to post collateral equal to the amount Surety demanded, and the undersigned waive any argument or purported defense that Surety has other remedies at law other than the injunction. The undersigned also agree that the failure to post collateral with Surety in the amount demanded constitutes irreparable harm to Surety.

**6. ASSIGNMENT**

A. As security for the performance of all of the provisions of this Agreement, Indemnitors hereby assign, transfer, pledge and convey to Surety (effective as of the date of each such Bond or Bonds, but only in the event of Default as defined above) all rights in connection with any Contract, including but not limited to:

1) All subcontracts let in connection therewith and the materials embraced therein, such subcontractors' surety Bonds; and
2) All machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purposes of the Contracts, including all materials ordered for the Contracts; and
3) Any and all sums due or which may thereafter become due under said Contracts and all sums due or to become due on all other Contracts, bonded or unbonded, in which any or all of Indemnitors have an interest; and
4) All rights arising out of insurance policies.

In the event of such default, Indemnitors hereby authorize Surety to enter upon the premises and take possession of the items listed above and enforce, use and enjoy title and possession thereto, to sell same and apply any proceeds to satisfy any indebtedness of Indemnitors hereunder. Indemnitors hereby release and discharge Surety from any liability for actions taken by Surety or for its omissions in the exercise of its rights under this Assignment.

B. This Agreement may be assigned by Surety without consent of Indemnitors and shall inure to the benefit of Surety's successors and assigns.

16.     By virtue of the definitions and representations in the Indemnity Agreement, the Defendants are, inter alia, obligated to post collateral with ASIC, cooperate with ASIC's investigation into claims, and are jointly and severally liable to ASIC as set forth herein.

### C. ASIC's Concerns About Exposure, Receipt of Claims, and Collateral Demands

17. To date, ASIC has received a performance bond claim on the Project alleging that Bagi failed to properly perform under the contract with GBI. The claim currently totals at least $496,493.

18. ASIC is in the process of reviewing and analyzing the claim and has requested certain information from Defendants regarding any defenses to the claims, and Defendants' intentions and ability to resolve the claims.

19. In light of these claims, ASIC is being exposed to the possibility of substantial losses under its Bond, for which the Defendants are liable.

20. ASIC has demanded access to Defendants' books and records so that ASIC can assess its actual and potential liability under the Bond. Defendants have not granted ASIC access to books and records.

21. ASIC did not receive a substantive response to this request, nor access to Defendants' books and records.

22. ASIC demanded that Defendants post collateral in the amount of $500,000.

23. The Defendants have not posted any collateral with ASIC.

24. The Defendants' failure to respond to ASIC's collateral demand, along with other information received from Defendant, has exacerbated ASIC's concerns about Defendants' ability and intention to satisfy bonded obligations.

25. ASIC has incurred attorneys' fees, costs, and expenses and expects to continue incurring attorneys' fees, costs, and expenses on a near daily basis until this matter is resolved.

26. ASIC is concerned that there will be a shortfall of funds available to Bagi to complete its projects.

27. All conditions precedent to bringing and maintaining this action have been met or have occurred.

### FIRST CLAIM FOR RELIEF
### (Breach of Express Contract)

28. ASIC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

29. The Defendants entered into valid and enforceable contracts, the Indemnity Agreement, with ASIC.

30. Sufficient consideration supports the Indemnity Agreement.

31. ASIC substantially performed its obligations, if any, under the Indemnity Agreement.

32. The Defendants failed to meet its obligations under the Indemnity Agreement, which constitutes a material breach.

33. Defendants' breach of the Indemnity Agreement has damaged ASIC, and Defendant is liable to ASIC for all losses and expenses incurred by ASIC as a result of the issuance of the Bond, including, but not limited to, bond payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the Indemnity Agreement.

### SECOND CLAIM FOR RELIEF
### (Common Law Indemnification)

34. ASIC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

7

35. Bagi, as the principal under the Bond, is required to indemnify and hold ASIC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by ASIC on account of the issuance of the Bond.

36. ASIC has made demand upon Bagi to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bond.

37. Bagi has failed to meet its obligations to ASIC under Colorado law.

38. Bagi's failure to meet its obligations to ASIC under Colorado law has damaged ASIC, and ASIC is entitled to damages.

### THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance)

39. ASIC hereby incorporates by reference the allegations contained above as though fully set forth herein.

40. Pursuant to the Indemnity Agreement, the Defendants are required to place ASIC in sufficient funds to cover any and all losses or expenses, including attorneys' and consultant's fees and costs, incurred or to be incurred by ASIC as a result of the issuance of the Bond.

41. There is no adequate remedy at law for ASIC to recover the benefit of the Indemnity Agreement.

42. ASIC has performed any obligations owed to the Defendants under the Indemnity Agreement and/or Bond.

43. ASIC requests specific performance on the provisions of the Indemnity Agreement which require Defendants to grant access to books and records and/or to place ASIC in sufficient

funds to cover any possible liability or loss for which Defendants are or will be obligated to indemnify ASIC under the terms of the Indemnity Agreement.

44. If Defendants do not or cannot place ASIC in sufficient funds, ASIC requests an equitable lien in the amount of no less than $500,000, plus attorneys' and consultants' fees and costs ("Lien Amount") on any real property owned by the Defendants, including, but not limited to, 5808 Knoll Crest Court, Boulder, Colorado 80301 ("Property").

45. If the Defendants do not or cannot place ASIC in sufficient funds, ASIC should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the Assignment (Sixth) paragraph of the Indemnity Agreement.

### **FOURTH CLAIM FOR RELIEF**
### **(Injunctive Relief – *Quia Timet*)**

46. ASIC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

47. Under the equitable doctrine of *quia timet*, ASIC is entitled to have Defendants place funds or other security with ASIC sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of the breach of the Indemnity Agreement or a breach of other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction management and any other outside consulting fees from and against any and all such losses, fees, costs and expenses, which ASIC may sustain or incur by reason or consequence of having issued the Bond as set forth more fully above and in the Indemnity Agreement.

48. Despite demand, Defendants have failed to place ASIC in such funds in direct contravention of ASIC's *quia timet* rights.

49. Pursuant to the terms of the Bond, ASIC has guaranteed that if Bagi fails to take certain actions, the underlying bonded obligation will become due, and ASIC will perform and/or pay the debt.

50. Unless ASIC obtains an Order establishing equitable liens, ASIC will not be adequately secured for its obligations under the Bond.

51. If ASIC is unable to obtain an Order requiring Defendants to place ASIC in collateral as requested in ASIC's demands, ASIC will be irreparably harmed.

52. ASIC is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and ASIC will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

53. ASIC is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting ASIC a valid equitable lien in the Lien Amount upon all assets and real property in which the Defendants have an interest, such liens to remain in place until ASIC has been placed in funds, and restraining Defendants from transferring, disposing, or otherwise liquidating any property owned by Defendants, real or personal, beyond reasonable living expenses, during the pendency of this matter.

54. ASIC should also be given a valid equitable security interest in the Lien Amount on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the Assignment (Sixth) paragraph of the Indemnity Agreement.

55. Upon information and belief, Defendants have equity in the Property described above and/or have received and continue to receive income and/or other intangible benefits from the operation of Bagi as a direct result of ASIC's issuance of the Bond or other agreements. The interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until ASIC is repaid.

### FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment – Equitable Liens)

56. ASIC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

57. ASIC conferred a benefit on Defendants by extending surety credit and/or issuing the Bond on behalf of Bagi.

58. Defendants accepted and appreciated that benefit by profiting from Bagi's operations, which would not have been possible without the issuance of ASIC's surety credit and/or the Bond.

59. Defendants further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of ASIC's surety credit and/or the Bond.

60. Defendants agreed to defend, indemnify, and post collateral with ASIC in exchange for and pursuant to the terms of the Indemnity Agreement.

61. By failing and refusing to do so, Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which ASIC is entitled pursuant to the Indemnity Agreement and/or common law.

11

62. It would be inequitable for Defendants to retain the benefit of ASIC's surety credit and/or the Bond without complying with their concomitant obligations under the Indemnity Agreement and/or common law to post collateral as promised to protect ASIC from losses.

63. Under these circumstances and given the surety relationship between ASIC and Defendants, general considerations of right and justice dictate that ASIC be granted the right to have Defendants' assets applied to their obligation to post collateral with ASIC.

### SIXTH CLAIM FOR RELIEF
### (Declaratory Relief - Assignment)

64. ASIC incorporates by reference the allegations contained above, as though fully set forth herein.

65. An actual and substantial dispute exists between ASIC and Defendants with respect to ASIC's right to be placed in funds and indemnified from loss under the Bond.

66. A prompt and judicial determination of the respective rights of the parties in these respects is necessary and appropriate.

67. Pursuant to the Indemnity Agreement, Defendants assigned certain rights to ASIC, and the assignments have been triggered by Defendants' defaults under the Bond and Indemnity Agreement.

68. ASIC seeks a declaratory judgment that any and all of the assignment provisions have been triggered and the assignments should be effectuated and enforced until such time that the Lien Amount is satisfied, and such amount is paid in good funds to ASIC.

### IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, ASIC requests judgment against Defendants as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by ASIC as a result of Defendants' breach of the Indemnity Agreement, as well as specific performance of the same;

- For Defendants to indemnify and hold ASIC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney fees, imposed upon, sustained or incurred by ASIC on account of the issuance of the Bond;

- Due to Defendants' failure or inability to place ASIC in sufficient funds, ASIC requests an equitable lien in the Lien Amount (including attorneys' fees, costs, and expenses) to be placed on any real property owned in whole or in part by Defendant including, but not limited to, 5808 Knoll Crest Court, Boulder, Colorado 80301;

- ASIC requests a valid security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to all items, property, documents, etc. identified in the Assignment (Sixth) paragraph of the Indemnity Agreement;

- For preliminary and permanent injunctive relief requiring Defendants to grant access to books and records and to place ASIC in funds by money, property, liens or security interests in real or personal property, as determined by ASIC, and restraining each of the Defendants from transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable living expenses, during the pendency of this matter;

- For such further relief as the Court deems just and proper.

Respectfully submitted this 20th day of December, 2019.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

*The Original Signature is on File at The Hustead Law Firm, A Professional Corporation*

*s/Connor L. Cantrell, Esq.*
Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
*Attorneys for Plaintiff*

Address of the Plaintiff:
365 Northridge Road
Suite 400
Atlanta, Georgia 30350

14